DECISION.
On August 21, 2000, in the Hamilton County Court of Common Pleas, defendant-appellant Michael Caperton entered guilty pleas, in the case numbered B-0003101, to two counts of gross sexual imposition after another count of gross sexual imposition, as well as accompanying specifications to all counts, was dismissed. Caperton also entered guilty pleas, in the case numbered B-0004514, to four counts of pandering obscenity involving a minor and four counts of illegal use of a minor in nudity-oriented material after four additional counts of illegal use of a minor were dismissed. Caperton was sentenced to a lengthy term of incarceration. A sexual-predator hearing was conducted on the same day, immediately prior to sentencing. The record transmitted to this court is limited to the case numbered B-0003101, which corresponds to the docketed notice of appeal.
In this appeal, Caperton now asserts four assignments of error: (1) that the trial court erred when it used information from an interview, conducted in the absence of counsel at a critical stage of the proceedings after a request for counsel had been made, to increase his sentence; (2) that the court erred by imposing maximum, consecutive sentences; (3) that the court erred in adjudicating him a sexual predator because R.C. 2950.09 is unconstitutionally vague; and (4) that the court erred by adjudicating him a sexual predator based upon insufficient evidence, after failing to follow the model provided in State v.Eppinger.[1]
We first address Caperton's third assignment of error, which contends that R.C. 2950.09 is unconstitutionally vague. We overrule this assignment of error on the authority of State v. Williams.[2]
We address Caperton's remaining three assignments of error together, as they concern in various ways the use of information elicited from him during a polygraph examination. The trial court directed that a polygraph examination of Caperton be performed so that the results could be used at sentencing and at the sexual-predator hearing. Caperton had requested that counsel be present during the polygraph examination, but the examination proceeded without a response from the trial court, in the absence of counsel. Caperton contends that it was error for the trial court to use information elicited from him during the polygraph examination at sentencing and at the sexual-predator hearing. We agree.
The Ohio Supreme Court has stated that the rules of evidence do not strictly apply at either criminal sentencing or sexual-predator hearings.[3] Reliable hearsay, such as a presentence-investigation report, may be relied upon by the trial court at sexual-predator hearings.[4] Similarly, at sentencing, the trial court has discretion to consider information that otherwise would be barred at trial, but there are limits to its discretion when the court refers to external sources while weighing statutory sentencing factors.[5] "Under Ohio's felony sentencing law, there are two primary categories of factors the court must consider in making the sentencing determination — seriousness factors and recidivism factors."[6] The Ohio Supreme Court has further observed that "[t]he United States Supreme Court has recognized that even a sentence within the limits of a state's sentencing laws may violate due process if the sentencing proceedings are fundamentally unfair."[7]
With respect to polygraph examinations, the Ohio Supreme Court has long held that before an examiner's opinion may be admitted as evidence in a criminal trial, certain conditions must be met.[8] The first condition is that the prosecuting attorney, the defendant, and his counsel must sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion.[9] In recent years, the United States Supreme Court considered the reliability of polygraph examinations. The Court affirmed a military judge's decision denying a defendant's motion to introduce polygraph evidence to support his testimony that he had not knowingly used drugs.[10] The military judge had relied on a military rule of evidence making polygraph evidence inadmissible in court-martial proceedings.[11]
Pertinent to our analysis, the Court noted,
 [T]here is simply no consensus that polygraph evidence is reliable. To this day, the scientific community remains extremely polarized about the reliability of polygraph techniques. * * * * Whatever their approach, state and federal courts continue to express doubt about whether such evidence is reliable.[12]
 We recognize that sentencing and sexual-predator hearings do not occur until after a defendant has already been found guilty of an offense. But we are persuaded that the use of a polygraph examiner's opinion during these later proceedings does not necessarily make it reliable hearsay, and its use at sentencing may still constitute an abuse of discretion.
The case sub judice illustrates our concerns about the unfairness and unreliability of the unconditional use of a polygraph examiner's opinion at sentencing or at a sexual-predator hearing. The purpose for administering the polygraph examination in this case gives us particular concern. The trial court told Caperton that "an ex-homicide detective that I used to work with [will] give you a polygraph exam to determine what's going on in your mind and stuff like that." Then, before the sexual-predator and sentencing hearings commenced, the trial court stated that, as part of the presentence investigation, a polygraph exam had been done "to see concerning whether he was a sexual predator, also concerning how to sentence him, and, you know, what's going through his mind, what causes him to do these things." These comments by the trial court raise serious questions about whether the polygraph examination met the court's stated needs, and whether, for example, a psychological evaluation should have been required. Other comments made by the examiner bolster our view: "[h]e is what I would consider based on my experience for doing therapeutic tests for several treating therapists of sex offenders, he's a high-risk applicant, because, for one thing, he still doesn't take credit for what happened. It's his wife's fault. He was just curious."
The circumstances under which the polygraph examination was given also raise fairness concerns. The transcript transmitted to this court shows that there was a marked difference of opinion between the trial court and Caperton's counsel about the conditions under which Caperton had agreed to submit to the polygraph examination. Counsel insisted that he had asked for an opportunity to be present for the examination and was never contacted. The examination was conducted in the absence of defense counsel. After the examination had been performed, the trial court admitted that it had not called counsel: "It kind of slipped my mind. I apologize." The court added, "I would have done the test anyway because I wasn't sure what his [the examiner's] parameters were." An extensive discussion then occurred in which the trial court and the examiner justified their lack of notification to defense counsel.
The presentation of the polygraph examiner's opinion at the hearings raises additional fairness concerns. The record does not include a final report of either the polygraph examination itself or the examiner's opinion. Early in the hearing the examiner stated, "As you can see with the report * * * *," but, later, the examiner informed the trial court that he had not had time to prepare a final "typed" report and referred instead to his "work product" and "notes," which were made part of the record. The examiner's qualifications on the record were limited to noting that he had been a homicide investigator, doing this "specialized testing" since 1992 and working for the courts for a number of years.
Because of the continuing controversy over the reliability of polygraph examinations and our specific concerns about the polygraph examination in the case sub judice, we hold that, in the absence of a written stipulation by the prosecutor, Caperton, and his counsel, the trial court's use of the polygraph examiner's opinion did not involve reliable hearsay suitable for use at the sexual-predator hearing and was an abuse of discretion at sentencing. For this reason, the first, second, and fourth assignments of error are sustained. As the trial court impermissibly relied upon the polygraph examiner's opinion without the requisite written stipulation when deciding upon Caperton's sexual-predator adjudication and sentences, his sexual-predator adjudication and sentences are reversed, and this cause is remanded for a new sexual-predator hearing and for resentencing.
Judgment affirmed in part and reversed in part, and cause remandedHildebrandt, P.J., and Painter, J., concur.
[1] See State v. Eppinger (2001), 91 Ohio St.3d 158, 743 N.E.2d 881.
[2] See State v. Williams (2000), 88 Ohio St.3d 513, 534, 728 N.E.2d 342,362.
[3] See State v. Cook (1998), 83 Ohio St.3d 404, 425, 700 N.E.2d 570,587.
[4] See id.
[5] See State v. Arnett (2000), 88 Ohio St.3d 208, 216, 724 N.E.2d 793,799-800, citing State v. Bays (1999), 87 Ohio St.3d 15, 31,716 N.E.2d 1126, 1143.
[6] See State v. Roseberry (Feb. 24, 2000), Jefferson App. No. 99-JE-13, unreported.
[7] See State v. Arnett, supra, at 217-218, 724 N.E.2d at 801.
[8] See State v. Souel (1978), 53 Ohio St.2d 123, 372 N.E.2d 1318, syllabus.
[9] See id.
[10] See United States v. Scheffer (1998), 523 U.S. 303,118 S.Ct. 1261.
[11] See id.
[12] See United States v. Scheffer, supra, at 309-312,118 S.Ct. at 1265-1266.